UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

In re:

MARY WILSON PETERSON,                          Case No.: 3:12-bk-02432-BAJ

Debtor                                         Chapter 13

### The Purchase/Sale Contract Was Not Assumable Under 11 U. S. C. § 365 Because Of Kracor's Prepetition Breach and Did Not "Ride Through"

## Introduction

Kracor-South, Inc. (Kracor) and Mr. James K Lindsey (Mr. Lindsey) have proposed a theory to this Court to the effect that Ms. Peterson failed to reject the executory purchase and sale contract in her 2012 chapter 13. Hence, according to Kracor and Mr. Lindsey, the executory purchase and sale contract passed through Ms. Peterson's 2012 chapter 13 and remains in effect as an enforceable contract.

This "ride through" argument is unsupported by the facts or the law in this case. Ms. Peterson terminated the purchase and sale prior to the filing of her 2012 chapter 13. A terminated contract, caused by a material breach, is not executory as a matter of law. Executory contracts still require performance by both parties to the contract.

1

Only executory contracts, with performance still due by both sides on the date of the petition, are assumable under the provisions of 11 U. S. C. § 365. Ms. Peterson's land sale contract with Kracor was not assumable at the time of her 2012 chapter 13. Because of Kracor's breach and her termination of that land sale contract on 19 July 2008 (Peterson Ex. # 32), the land purchase/sale contract was not executory and therefore not assumable in Ms. Peterson's 2012 chapter 13.

**The Purchase / Sale Contract Was Terminated
Prior To Ms. Peterson's 2012 Chapter 13**

On 20 December 2004 Kracor-South, Inc. and Ms. Peterson executed a Purchase and Sale Contract under the terms of which Kracor would purchase land owned by Ms. Peterson described as 8611 New Kings Road Jacksonville Florida 32219 for a total price of $325,000.00 (Peterson Ex.#5). An addendum provided that the conditions of the sale were "to be accomplished within 40 days after date of execution of contract" (Peterson Ex. #5) It is notable that the executed Purchase and Sale Agreement specifically provided that: "Modifications of this agreement will not be binding unless in writing, signed and delivered by the party to be bound" ( Peterson Ex. #5 @ P5). There was never any subsequent writing signed by Kracor or Ms. Peterson altering the original Purchase and Sale contract. The agreement also provided that Kracor would fund the balance of the purchase price without the necessity of a third-party purchase money mortgage. Ms. Peterson considered the lack of a third-party mortgage a benefit to her because it would reduce the fees required by a third-party mortgage originator.

In spite of the lack of any continuation in writing of the Kracor/Peterson sale contract, Kracor sued Ms. Peterson in the Florida State Court on 4 May 2006 for specific performance of the land purchase and sale contract in *Kracor-South, Inc. v. Mary E Peterson*, Case #16-2006 CA 003295-XXXX-MA (Peterson Ex.#17). After the commencement of the lawsuit, a mediation proceeding was held which resulted in a settlement on the 20th day of May 2008 (Peterson Ex.#33).

In the mediation agreement Kracor's attorney announced the closing date terms:

"---- In the event that closing does not occur on or before 5:00 p. m., June 2nd 2008, and due to no fault on the part of Ms. Mary Peterson, then Ms. Peterson shall be entitled to receive payment of the sum of $10,000 currently held by Duane Romanello, Esquire, as escrow agent. Said funds shall be disbursed and made payable to Ms. Peterson's counsel Albert Mickler on her behalf and shall be disbursed within 48 hours----

**The Court**: Received by Mr. Mickler's office prior to 5:00 on June 4th.

**Mr. Mickler**: That was the agreement.

**Mr. Doyle**: Very good.

**The Court**: And such receipt will entitle Kracor to extend the time for closing until June 30th.

\*\*\*\*\*\*

(Peterson Ex. #33 @ P 9)

3

Ms. Peterson subsequently voiced her concerns to the State Court at the mediation conference:

**The Court:** Yes, Ms. Peterson. Go ahead.

**Ms. Peterson:** Your Honor, this has been an ongoing situation with Mr. Lindsey for four years. I've tried to work with him, and he made promises and I don't want this to go any longer than June the 2nd. And if he cannot come up with the money, I don't want to have to come back down here. It has been detrimental to my health.

**The Court:** Right. I understand.

**Ms. Peterson:** I don't want to have to come back. If he don't have the money, I could go ahead and vacate my property because I've been more than lenient with him because you can't stay on nobody property no year and don't pay anything.

**The Court:** I understand.

**Ms. Peterson:** He broke his contract and he—and this lawyer kept writing and telling him he was trespassing. He paid no attention and he evade the law and I don't deal with people who evade the law.

**The Court:** Well, as of the 2nd, if it hasn't closed then you can …you're entitled to the $10,000 to get it to the 30th of June, but after that it's over.

(Peterson Ex. #33 @ p.10-11)

Thereby, through the mediation process the State Court established the executory duties of Kracor and Ms. Peterson and the timeline for the completion of those executory duties.

Kracor did not close within the time set by the State Court and the announced mediation agreement. Consequently, on 19 June 2008, Ms. Peterson's attorney wrote to Kracor and filed in the State Court case a "Notice Of Cancellation Of Sale" which stated in part:

As Kracor will recall, a Settlement Agreement was reached in the presence of the Circuit Court on May 20, 2008. Part of the settlement agreement contained a representation by Kracor concerning the initial payment to be made relating to the 8611 New Kings Road Jacksonville, Florida purchase/sale transaction. According to Kracor, if the closing did not occur before 5:00 pm on June 2, 2008, due to no fault of Ms. Peterson she would be entitled to payment of the sum of $10,000.00 currently held by Mr. Duane Romanello, to be received by Mickler's office on June 4. ---The closing did not take place on June 2 2008, and the $10,000.00 was not paid by June 4, 2008.

Instead, Ms. Peterson received word from the Kracor South closing agent on a later date that Ms. Peterson would be required to obtain sale permission from the United States Bankruptcy Court. This sale permission was apparently requested by Kracor's title insurance.

Ms. Peterson is not responsible for the extra requirements imposed by the title insurance underwriter (who is apparently misinformed). Ms. Peterson holds valid title to the property without the necessity of having to seek Bankruptcy Court permission except as a courtesy to the title insurance underwriter. Ms. Peterson's Chapter Thirteen Plan was confirmed on April 8, 2004, as per the attached case profile in case no. 3:03-bk-06712.

\*\*\*\*\*\*

Therefore, no delay was the "fault of Ms. Mary Peterson" and the $10,000.00 should have been delivered as specified in the Agreement between the parties. ----

Consequently, Ms. Peterson considers that Kracor's failure to deliver the $10,000.00 was a breach of the contract/stipulation. Ms. Peterson had expressed her frustration with the Kracor purchase process to the Court at the Stipulation Hearing. If Kracor was really serious about the closing then, in such a case, Kracor would have delivered the $ 10,000.00 to this office and requested an extension in order that the title insurance requirements could have been met. Ms. Peterson views the failure to deliver the $10,000.00 as just another example of Kracor's delay tactics.

---Because of Kracor's failure to pay the stipulated $10,000.00 extension fee, Ms. Peterson declines to proceed with the sale.

(Peterson Ex. #32)

Ms. Peterson's 19 June 2008 was sent to the attorney representing Kracor and filed in the state court (Peterson Ex. # 17 @ docket # 37).

Therefore, Ms. Peterson's letter of 19 June 2008 terminated the executory duties of the parties to the mediated State Court settlement agreement due to the failure of Kracor to close within the time set by the State Court.

6

No immediate response to the sale cancellation was received from Kracor or Mr. Lindsey. Consequently, 14 ½ years passed after the 19 June 2008 Notice of Cancellation of Sale letter before Kracor and Mr. Lindsey again commenced enforcement proceedings of the purchase and sale contract in the State Court on 16 February 2023 (Peterson Ex. # 12,13,14).

## The Terminated Purchase/Sale Contract
## Was Not Executory

In *Argonaut Ins. Co, v. Falcon V, L.L.C.,* 44 F 4th 348 (5th Cir, 2022) the Fifth Circuit provided a good definition of an executory contract and the effect in bankruptcy, of a non-executory contract in a situation where that executory definition did not apply. In *Argonaut v. Falcon V, Argonaut* as a bonding company entered into a bonding agreement whereby Argonaut posted a bond that guaranteed Falcon V's performance in gas well restoration to third parties. Falcon V was to pay continuing premiums to Argonaut. However, the third-party bond agreement provided that the obligation of Argonaut under the bond would not be affected by the failure of Falcon V to pay the ongoing premiums. Falcon V later filed a Chapter Eleven in May 2019. The confirmed plan of Falcon V provided that the reorganized Falcon V entities "shall be deemed to have assumed each executory contract ---- to which it is a party" (Argonaut at 351 ). In February 2020 Argonaut sent to Falcon V a request for additional collateral under their bond agreement. Falcon V declined. On a subsequent motion to interpret the terms of the confirmed Chapter Eleven plan filed by Argonaut, the Bankruptcy Cout entered an Order declaring the Argonaut/Falcon V bond agreement was not assumed because Argonaut owed no continuing performance duty to Falcon V under the bond agreement. Argonaut appealed.

7

The District Court affirmed the bankruptcy court's order.

On appeal the Fifth Circuit discussed the definition of an executory contract:

The Bankruptcy Code does not define the term " executory contract", but we have concluded that a contract is executory "if performance remains due to some extent on both sides' and if 'at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party'" ---In other words, "the test for an executory contract is whether under the relevant state law governing the contract , each side has at least one material unperformed obligation as of the bankruptcy petition date"

****** 

Applying the Countryman definition to this case, the bankruptcy and district courts focused on the obligations that Falcon V and Argonaut owed each other. They both concluded that even though Falcon V has a continuing obligation to pay premiums to Argonaut ---- the Surety Bond Program nonetheless does not satisfy the Countryman test's first prong because "Argonaut has already posted the Bonds pre-petition and does not owe further performance to Falcon V—Because Argonaut owed no continuing performance to Falcon V, the surety bond program is not an executory contract."

******

Argonaut alternatively argues that even if Falcon V did not assume the Surety Bond Program, the program is still enforceable against them because it passed through the bankruptcy unaffected under the "pass through" or "ride through" doctrine. This argument might have merit if the Surety Bond Program were an executory contract that had neither been assumed or rejected. However, "non executory contracts --- are not subject to assumption, rejection or the ride- through doctrine" – Because, as explained above, the Surety Bond Program is not an executory contact –

<em>Argonaut V. Falcon V</em> at 351-354

Accord: *Winchester Surplus Lines Ins. Co. v. Surfside Resort & Suites, Inc.* 344 B.R. 179 (Bankr. M. D. Fla 2006) The Chapter 11 debtor (*Surfside*) had obtained annual insurance coverage from *Winchester* prepetition, by payment in full of the premium prepetition. The insurance coverage contract was not executory. According to the Countryman definition, debtor's obligation had been satisfied because the premium had been prepaid.   There no longer remained unfilled material performance obligations by both parties to the insurance contract. The contract was not executory. Consequently, the insurance contract remained in effect and subject to claims of the Estate's assignee. Also, accord: *In Re Government Sec. Corp.* 101 B.R. 343 (Bankr. S. D. Fla.. 1989). In *Government Securities,* a security dealers blanket bond issued by NUFIC pre-petition, was not an executory contract under either the "Countryman" theory or the "Functional" approach theory. There were no obligations under the blanket bond that *Government Sec. Corp,* was obligated to perform that would have been a material breach of the contract excusing NUFIC's bond performance. The premiums had been paid by *Government Sec. Corp.* pre-petition. The trustee did not have to assume the bond contract by the 11 U.S.C.. § 365 (d)(1) deadline and could still make a claim under the NUFIC bond.

9

Under the *Argonaut, Winchester Surplus and Government Sec. Corp.* rationales the failure of Kracor to perform its duties under the land purchase/sale closing by the deadline set by the State Court (including the payment of the $10,000.) rendered the land purchase/sale contract non executory and excused further performance by Ms. Peterson ("it's over" *supra,* Pg. 4).

Mr. Lindsey was present at the 20 May 2008 State Court mediation hearing (Peterson Ex. #33 @ Pg.3). Mr. Lindsey, as a representative of Kracor, would have heard the Kracor attorney announce the sale closing date of 2 June 2008 with an alternative date of sale closing date of 30 June 2008 upon the payment of the $10,000. deposit to Mickler. (Peterson Ex. #33 @ Pg.8; Pg.9) Mr Lindsey individually, and as a representative of Kracor, would have also heard Ms. Peterson express to the State Court her dissatisfaction with Mr. Lindsey's (and Kracor's) continual delays in purchasing the property when Ms. Peterson stated: "I don't want to have to come back. If he don't have the money---He broke his contract----he evade the law and I don't deal with people who evade the law" (Peterson Ex. # 33 Pg. 11). Finally, Mr. Lindsey would have heard the State Court's response "You're entitled to the $ 10,000 to get it to the 30th of June, but after that it's over" (Peterson Ex. #33 @ Pg.11).  Given the frustration expressed by Ms. Peterson and the State Court's reply, the failure by Kracor to close by the announced closing dates would have been a material breach of the mediation announcement of 20 May 2008. A "material breach" has occurred when the "party alleged to have breached the contract must have failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties," *Burlington and Rockenbach, P.A. V. Law Offices of E. Clay Parker* 160 So 3rd 955 (Fla. 5th D.C.A. 2015); A material breach is one that deprives the nonbreaching party of the benefit of its bargain. *In re Supermedia,Inc.*2013 Bankr LEXIS 4240*10 (Bankr. Del. 9 Oct. 2013)

As previously stated, Kracor missed the first closing date and never paid the $10,000. that would have continued the closing to the second closing date.  Kracor's breach of its announced obligations by the State Court mediated time was a material breach of the contact agreement announced in the State Court on 20 May 2008 and rendered the land purchase/sale contract non-executory, thereby excusing further performance by Ms. Peterson.

Where a sale contract was validly terminated before the bankruptcy case was filed, it is fundamental that the contract may not be resurrected and assumed by the debtor. Non-executory contracts are not assumable by the debtor. *In re Ecoventure Wiggins Pass, Ltd.,* 406 B. R. 123,127 (Bankr. M.D. Fla. 2009): (Refusing to allow the debtor to assume a condominium sale agreement that had been terminated by the buyer pre-petition); *Accord: In re Ecoventure Wiggins Pass, Ltd.406 B. R. 131 (Bankr. M.D. Fla. 2009)*

Conduct evidencing an anticipatory repudiation arises when a party demonstrates a "positive distinct, unequivocal and absolute refusal" to perform the contract when performance becomes due. A party may terminate a contract when the other party has committed an anticipatory repudiation. A debtor-in- possession may not assume a contract that has been terminated according to its terms under non bankruptcy law. Where a debtor had failed to close a sale pursuant to a "time is of the essence" closing date by timely completing the development of lots, it was a non-monetary default that was a historical fact unable to be cured.  *In re Eagle Creek Subdivision, LLC,* 397 B. R. 758 761, 764 (Bankr. E. Dist. N.C. 2008).

A debtor's motion to assume an executory contract pursuant to 11 U.S.C. § 365 (a) must be denied when the evidence demonstrated that OBT, a storage facility, had terminated the contract pre-petition because of the debtor's failure to pay for the storage of fertilizer based on the contract

and course of dealings of the debtor and OBT. The debtor's nonpayment was a material breach of the OBT contract ant the debtor's motion to assume was denied *In re Ganske,* 2021 Bankr. LEXIS 574 (Bankr E.D. Wis.2021).

When the debtor had been engaged in the business of providing services to dental practices and had caused a breach of the service contract with a dentist (Bush), the service contract breach was material. The pre-petition breach terminated the service contract. Therefore, the service contract was not assumable under 11 U.S.C.§ 365. "Section 365 only applies to executory contracts. Once a contract has been terminated it is no longer executory" *OCA V Bush* 378 B. R. 493, 517 (Bankr. E. D. La. 2007)

A land sale contract was not executory where the purchaser had failed to make the pre-petition balloon payment, which was an anticipatory repudiation, therefore, the seller had no further duty to perform *Buhler V. Davis* 2022 Bankr. LEXIS 3322 ( Bankr. M.D. Tenn 23 Nov. 2022); Debtor's employer had no further duties under non-compete agreement that the debtor had violated pre-petition by engaging in competitive activities after he was terminated therefore the non-compete agreement was not executory and could not be rejected by the debtor's chapter thirteen plan. *In re Spooner,* 2012 Bankr. LEXIS 1151*8 (Bankr. N. D. Ohio 16 March 2022).

Ms. Peterson's letter of 19 June 2008 terminated the sale. Ms. Peterson's letter stated that because of "the omission of Kracor" she had been forced "not to complete the purchase/sale transaction regarding the real property located at 8611 New Kings Road Jacksonville, Florida" (Peterson Ex. # 32). The bankruptcy courts are unanimous that a valid pre-petition termination of the contract agreement because of a material breach renders the contract non executory and non-assumable under 11 U.S.C. §365.

## Kracor's Illogical Argument

Kracor's Pretrial Memorandum of Law (Doc. # 90) contained a citation to *In re National Gypsum Co,* 208 F3d 498 (5th Cir 2000). *National Gypsum* at page 508 contained an argument of impeccable logic refuting Kracor's current claim that it possesses an executory contract against Ms. Peterson:

> The Fourth Circuit rebuffed the argument that a party to an un-rejected executory contract, neither assumed or rejected, had a definite interest and, consequently, had a claim against the debtor, occupying the role of a creditor with its attendant duties.--- Instead, the court held that a claim under an executory contract does not arise within the meaning of the Bankruptcy Act until the contract has been rejected. --- The court reasoned: the party to an executory contract would find it difficult to state a claim under the contract before it had been broken; and certainly neither the debtor nor the trustee could set out the amount of such a claim as required by order of court directing the filing of schedules---- and the holder of a contract would have a like difficulty in complying with the customary order of the judge with reference to the filing of claims by creditors.

> *National Gypsum* at 508

In other words, a "claim" under 11 U.S. C. § 101(5) does not arise until the executory contract has been breached by on party to that contract.

13

But Kracor did attempt to file a claim in this case. Kracor filed a Motion to allow a late claim for $100,0000. which was rejected by this Court as being untimely. (Peterson Ex.# 1-7). Under the above,quoted logic in *National Gypsum,* Kracor's attempt to file a claim for damages in this Court was proof that Kracor was then claiming that the Kracor/Peterson land sale contract was no longer executory.  As a result of the rejection/breach, a claim for breach of contract damages could be pursued by Kracor since the contract was no longer executory. Through its attempted claim for damages in this Court, Kracor was arguing in its Third Amended State Court Complaint that the purchase/sale contract had been breached and that Kracor was entitled to damages (Peterson Ex #3 @ Para 20 and "wherefore" clause).   According to the Fifth Circuit in *National Gypsum,* an executory contract is one that has not been breached. In summary, Kracor's attempt to file a claim in this case was an admission that the land sale contract was no longer executory because of an earlier breach.

Kracor may attempt to argue that Ms. Peterson breached the State Court mediated land sale contract. This would be untrue, given the facts of this adversary proceeding. Moreover, any such argument misses its point. An executory contract can still become non-executory through a breach by the debtor. *In re Ganske,* 2021 Bankr. LEXIS 574 (Bankr E.D. Wis.2021); (Ganske/Debtor's nonpayment of barge terminal fees was a material breach. Because of the pre-bankruptcy termination by non-payment, there was no contract to assume); *Buhler V. Davis* 2022 Bankr. LEXIS 3322 (Bankr. M.D. Tenn 23 Nov. 2022); (Debtor/Buhler's failure to make the balloon payment due pre-petition at the maturity date the contract was terminated, and the forfeiture remedy became available to the seller. The contract was not executory.)  *In re Eagle Creek Subdivision, LLC,* 397 B. R. 758 761, 764 (Bankr. E. Dist. N.C. 2008); (Debtor/Eagle Creek failed

to complete lot development in time for purchase by Eastwood. Eagle Creek's pre-petition breach rendered the purchase contract non-executory and non-assumable).

## Kracor Cannot Claim A Special Interest In
## The Peterson Real Property

Kracor cannot claim a special interest in the real property owned by Ms. Peterson that was the subject of the purchase/sale contract without a self-executing final judgment.

Fla. R.Civ. P. 1.570 provides in material part:

RULE 1.570 ENFORCEMENT OF FINAL JUDGMENTS.

******

**(d) Vesting Title.** If the judgment is for a conveyance, transfer, release or acquittance of real or personal property, the judgment shall have the effect of a duly executed conveyance, transfer, release or acquittance that is recorded in the county where the judgment is recorded. A judgment under this subdivision shall be effective notwithstanding any disability of a party.

A judgment entered under Fla. R. Civ. P. 1.570 "executes" the conveyance. *Kendall Grove Joint Venture V. Martinez-Esteve,* 59 B.R. 407,409 (Bankr S. D. Fla.1986). Kracor did not obtain a judgment in the State Court proceedings. A judgment is "a court's final determination of the rights and obligations of the parties in a case." *Floridians for a Level Playing Field V. Floridians Against Expanded Gambling,* 967 So 2d 832, 834 (Fla. 2007). Kracor's mediation agreement (Peterson Ex. # 33) was not a final judgment.

15

In the case of *In re Lowry,* 2006 Bankr LEXIS 5244 (Bankr M. D. Fla. 4 April 2006) the J' Meiers as purchasers enters into a land sale contract with Lowery. Eventually Lowry declined to close on the purchase/sale contract. The J'Meiers sued for specific performance in Florida State Court. Lowry filed for chapter seven bankruptcy protection. At the time of filing, the Florida State Court had not entered a final judgment. The J'Meiers requested that the Bankruptcy Court lift the 11 U. S. C. §362 automatic stay in order that the J'Meiers could pursue their state court remedies of specific performance. In its opinion the Bankruptcy Court specifically noted that the State Court had not entered a final judgment. The purchase/sale contract had been rejected [either by Lowry or by the trustee not assuming the contract for the benefit of the estate under 11 U.S.C. §365(d)(1)]. The contract was unenforceable. The rejection damages were discharged. The J'Meiers had failed to establish sufficient cause to lift the automatic stay.

For this reason, Kracor's citation to *In re Confer,* 2022 Bankr. LEXIS 631 (9th Cir. 10 March 2022) in the Kracor its pre-trial memorandum (Doc#99 at pg. 9)  is not dispositive. In *Confer* the vendee (Watson) had already obtained a California State Court specific performance order decreeing that the Confers close the sale transaction by issuing a "grant deed for the property into escrow by October 19, 2020" (*Confer* at *4). Of course, no such State Court self-executing Judgment was entered prepetition by the Florida State court in favor of Kracor, pre-petition.  In fact, Kracor never even sent the $10,000 extension deposit to Ms. Peterson's attorney. Kracor did nothing. Instead, Kracor deceptively lurked for almost 15 years after the mediation agreement before it filed its motion for summary judgment in the State Court (Peterson Ex. # 17 State Court docket sheet).

In similar fashion, the late-filed damages claim of Kracor has been denied by this Court (Peterson Ex. #7); the Kracor/Peterson purchase/sale contract had been breached prepetition; the State Court had not yet issued a final judgment; and Ms. Peterson has been discharged in this bankruptcy case. Kracor's request to renew its State Court proceedings would not now benefit the Peterson Chapter Thirteen Estate since Kracor would retain ownership of any State Court award of land.

**Conclusion**

A material breach occurred when Kracor failed to perform its closing obligations within the time period that had been agreed upon by Kracor and Ms. Peterson at the mediation process announced in the presence of the State Court on 20 May 2008. As a consequence of the material breach, the Kracor/Peterson obligations under the land sale contract ceased and became non-executory. Non-executory contracts cannot be assumed or rejected under 11 U.S.C., §365. The non-executory land sale contract did not "ride through" Ms. Peterson's chapter thirteen as a matter of law.

Kracor's claim for damages attempted in the Peterson chapter thirteen case was an admission that the land sale contract had been breached pre-petition. As a matter of law an entity cannot claim damages while that contract is executory and still in existence.

Kracor cannot claim any special interest in the Peterson real property because Kracor had not obtained a self-executing final judgment in the State Court in accordance with Fla. R. Civ. P. 1.570(d).

## Certificate of Service

I hereby certify that a copy hereof was furnished to Kevin B. Passenger, Esq. attorney for Kracor-South, Inc. and Mr. James K. Lindsey by CM/ECF transfer this 29th September 2023.

Albert H. Mickler
Florida.Bar # 168960
5452 Arlington Expressway
Jacksonville, Florida 32211
(904)725-0822
Ahm-planman@juno.com
Attorney for Ms. Peterson

18