**ORDERED.**

Dated: January 19, 2024

_____
Jason A. Burgess
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 3:12-bk-02432-BAJ |
| | Chapter 13 |
| MARY WILSON PETERSON, | |
| Debtor. | |
| _____/ | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Case came before the Court on the *Motion Seeking an Adjudication of Contempt against Kracor-South, Inc.* ("Kracor") *and James K. Lindsey* ("Lindsey") (the "Motion for Contempt") (Doc. 69) filed by the Debtor, the response in opposition to the Motion for Contempt (Doc. 81) filed by Kracor and Lindsey, and the reply filed by the Debtor (Doc. 82). A final evidentiary hearing was held on the Motion for Contempt on August 15, 2023 (the "Hearing"). At the conclusion of the Hearing, the Court took the matter under advisement and directed the parties to submit post-trial briefs (Docs. 108, 109) and proposed findings of fact and conclusions of law (Docs. 112, 113). Based on the argument and evidence presented, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rules 9014(c) and 7052.

## Findings of Fact

On December 20, 2004, the Debtor, as the seller, entered into a Purchase and Sale Agreement with Kracor (the "PSA") for the sale of real property located at 8611 US 1 North, Jacksonville, Florida 32205 (the "Property"). (Kracor's Ex. 1). Importantly, at the time the PSA was executed, the Debtor had a pending Chapter 13 case in this Court (the "2003 Bankruptcy Case," Case No. 03-bk-06712-JAF).

For reasons disputed between the parties, the sale of the Property never closed. As a result of the sale not closing, Kracor filed a lawsuit against the Debtor, seeking specific performance of the PSA, in the Circuit Court of Duval County, Florida (the "State Court").[1] (Kracor Exs. 2, 29).

On May 23, 2007, Kracor and the Debtor executed a Mediated Settlement Agreement and Second Addendum (the "Mediated Agreement"), which provided that the purchase price for the Property would be increased from $325,000.00 to $365,000.00, less applicable credits. (Kracor Exs. 1, 3). Despite the execution of the Mediated Agreement, the sale of the Property failed to close.

On May 20, 2008, the parties attended a hearing in the State Court Case during which the parties announced certain amendments to the Mediated Agreement. (Kracor's Ex. 4). At the conclusion of the hearing, the court ordered the parties to comply with the amended agreement as announced in open court (the "Court Ordered Agreement"). Id.

Ultimately, the sale of the Property never closed, and the parties blame one another for the failure to consummate the deal. (Debtor's Ex. 33; Kracor's Ex. 32). The Debtor maintains

---

[1] The case filed in State Court was assigned Case No. 16-2006-CA-003295 (the "State Court Case"). (Kracor's Exs. 2, 29).

that Kracor's failure to timely close, coupled with the non-payment of the $10,000 deposit, resulted in the cancellation of the sale.[2] Kracor disputes this allegation, and the enforceability of the PSA, the Mediated Agreement, and the Court Ordered Agreement remains pending before the State Court.

On March 1, 2011, Kracor filed its Third Amended Counterclaim in the State Court case wherein it sought recovery of damages for Breach of Contract and a Quantum Meruit/Unjust Enrichment claim. Specifically, Kracor sought to recover "in excess of $100,000.00" in alleged expenses that it expended to repair and improve the Property. (Kracor's Ex. 5, ¶ 23).

When the Debtor filed the instant Chapter 13 case on April 11, 2012, the parties were still actively litigating the State Court Case. (Kracor's Ex. 29). On Schedule A, the Debtor listed her ownership interest in the Property with a value of $118,380.00.[3] Despite the ongoing litigation, the Debtor did not list the State Court Case on her Statement of Financial Affairs. (Doc. 1, Kracor's Ex. 6). The Debtor also failed to list Kracor or Lindsey as creditors on Schedules D, E, or F and did not list any executory contracts on Schedule G. (Doc. 1, Kracor's Ex. 6).

On April 24, 2012, the Debtor filed her Chapter 13 Plan (the "Plan"), which neither listed nor provided any treatment for Kracor or Lindsey.[4] (Doc. 10; Kracor's Ex. 8). Further, the Debtor's failure to list Kracor or Lindsey as parties in interest resulted in neither of them initially receiving a copy of the Plan. (Doc. 12; Kracor's Ex. 9). The Debtor also candidly testified at the hearing that her failure to notify or include Kracor or Lindsey was intentional and was based on

---

[2] In support of her position, the Debtor references the mediation conference held in State Court on May 20, 2008, in which the judge stated: "Well, as of the 2nd, if [the sale] hasn't closed then you can … you're entitled to the $10,000 to get [the sale] to the 30th of June, but after that it's over." (Debtor's Ex. 33, pp. 11-12). The Debtor also references the "Notice of Cancellation of Sale" her attorney filed in the State Court. (Debtor's Ex. 32).

[3] As set forth in the Mediated Agreement, the value listed on the Debtor's schedules was significantly under Kracor's proposed purchase price of $365,000 (Doc. 1; Kracor's Ex. 6).

[4] The Plan also did not reject any executory contracts. Specifically, Paragraph D(1) of the Plan provided "[t]he Debtor(s) do/does not reject any executory contracts." (Doc. 10; Kracor's Ex. 8).

3

her belief that she owed neither of them any money.  (Doc. 110, Tr. pgs. 93-94; 97- 98).

On June 18, 2012, an attorney for the Debtor filed a Suggestion of Bankruptcy in the State Court Case.  (Kracor's Ex. 20).  Despite receiving notice of the Debtor's bankruptcy case, Kracor waited nearly two (2) years to file a Motion to Allow Late Filed Claim (the "Motion to Allow").  (Doc. 38; Kracor's Ex. 12-17).  On June 13, 2014, the Bankruptcy Court entered an Order Denying Motion to Allow Late Filed Claim (the "Order Denying").  (Doc. 50; Kracor's Ex. 18).  Notably, the Order Denying recognized that Kracor's counsel had conceded that he received the Suggestion of Bankruptcy filed in the State Court Case in 2012.[5]  Id.  In denying the Motion to Allow, the court stated,

> [t]he Court finds that Kracor's receipt of notice of Debtor's bankruptcy case on June 20, 2012, almost two months before the deadline to file a proof of claim, satisfied its due process rights and permitted it to timely file a proof of claim. Id.

On July 2, 2014, absent any objection to confirmation of the Plan by Kracor, the court entered an Order Confirming Chapter 13 Plan.[6]  (the "Confirmation Order"; Doc. 53; Kracor's Ex. 19).  On January 24, 2017, the Court entered the Order Discharging Debtor after Completion of Plan (the "Discharge Order").  (Doc. 63; Debtor's Ex. 10).  The Discharge Order clearly provides that (1) "[t]he discharge prohibits any attempt to collect from the debtor a debt that has been discharged, and (2) [t]he chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged." Id.

Nearly a *decade* after receiving actual notice of the bankruptcy, Kracor filed a Motion to Enforce and for Sanctions Pursuant to a Mediated Agreement and Judicial Order (the "Motion to

---

[5] Despite receiving the Suggestion of Bankruptcy filed in the State Court Case in 2012, Kracor's counsel did not file a Notice of Appearance, Request to Receive Documents, and Request to be Added to Mailing Matrix until March 3, 2014.  (Doc. 32).

[6] The docket reflects that Kracor's counsel received notice of the confirmation hearing and the Confirmation Order. (Docs. 45, 53).

4

Enforce") in the State Court Case seeking specific performance. (Kracor's Ex. 21). On February 7, 2022, the Debtor's counsel filed a Reply to the Motion to Enforce, which alleged that Kracor breached the Mediated Settlement Agreement by failing to pay the contractual purchase price for the Property. (Kracor's Ex. 22).

On March 24, 2023, Kracor filed a Motion for Summary Judgment in the State Court Case seeking the appointment of a special master for the purpose of selling the Property to Kracor. (Kracor's Ex. 23). In response, the Debtor's counsel sent a letter advising Kracor of the 2012 Bankruptcy Case. The letter asserted that continued attempts to enforce the Mediated Agreement and/or Court Ordered Agreement would violate the discharge that the Debtor received in 2017. (Debtor's Ex. 19). The Debtor's counsel cautioned that if Kracor did not withdraw its pleadings in the State Court Case within ten (10) days, the Debtor would move to reopen her 2012 Bankruptcy Case for the purpose of filing a motion to hold Kracor and Lindsey in contempt for violation of the discharge injunction (the "Discharge Violation Letter"). Id.

On April 10, 2023, Kracor sent the Debtor a letter advising that it disputed the assertion that the remedy it sought was discharged in the 2012 Bankruptcy Case. (Kracor's Ex. 24). Kracor also simultaneously withdrew its Motion for Summary Judgment and filed a Motion to Stay Pending Clarification of Bankruptcy Issue in the State Court Case. (Kracor's Exs. 26, 27).

At the hearing, Mr. Lindsey testified that he did not believe the right to specific performance was discharged in the 2012 Bankruptcy Case, and that he is no longer seeking monetary damages.[7] (Trial Tr. pp. 123, 124, 129).

---

[7] In the Motion for Summary Judgment filed in State Court, Kracor requested that in addition to specific performance it should be awarded "fees and costs incurred in this action," and that the Debtor should "be required to pay the full costs of the Special Master." (Debtor's Ex. 14).

## Conclusions of Law

The primary issue for the Court's determination is whether Kracor's claim was discharged in the Debtor's 2012 Bankruptcy Case. The Debtor argues that the remedies sought by Kracor were discharged because (i) Kracor received ample notice of the 2012 Bankruptcy Case, (ii) the Order Denying disallowed the claim under 11 U.S.C. § 502, and (iii) Exhibit A to the Order Confirming Plan lists Kracor's claims as being disallowed. Conversely, Kracor asserts that, collectively, the Purchase Contract, Mediated Agreement, and Court Ordered Agreement constitute an executory contract that the Debtor did not list or reject, resulting in it "riding through" the 2012 Bankruptcy Case. Kracor also maintains that (i) the notice it received did not provide sufficient due process as to the Debtor's rejection of the contract, (ii) the Plan failed to provide for its claim, and (iii) the remedy it seeks to enforce is not a "claim" that is subject to the discharge provision.

### A. Kracor's claim was discharged.

The question of whether the alleged right to specific performance is a claim which is dischargeable under the Bankruptcy Code has definitively been addressed by other courts within the Eleventh Circuit. See Blair 11D Condo, LLC v. Rabin (In re Rabin), 361 B.R. 282, 285 (Bankr. S.D. Fla. 2007); Matlack v. Gaul, No. 06-60299-CIV, 2006 WL 8432475, at *11 (S.D. Fla. Sept. 25, 2006), aff'd sub nom. In re Gaul, 240 F. App'x 358 (11th Cir. 2007).[8] In Rabin, the Court agreed with the analysis of the district court in Gaul and concluded "that a specific

---

[8] The court in Gaul cited to a Supreme Court case which recognized the congressional policy behind Section 101(5)(b). See Ohio v. Kovacs, 469 U.S. 274, 280 (1985) (citing 124 Cong. Rec. 32393 (1978) (remarks of Rep. Edwards) (citation omitted). In Kovacs, the Court stated that Section 101(5)(b), "is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11." Id.

performance claim *under Florida law* is a 'claim' under § 101(5) of the Bankruptcy Code and therefore dischargeable." Rabin, 361 B.R. at 285 (emphasis added).  In reaching this holding, the court specifically noted that "[l]egislative history supports the view that equitable remedies such as specific performance may be treated as claims," and explained that:

> Based upon the statute, the legislative history and the Supreme Court's analysis in *Kovacs,* an equitable remedy will "give rise to a right to payment" and therefore be a "claim" under § 101(5)(B) *if the payment of monetary damages is an alternative to the equitable remedy.* In re Ben Franklin Hotel Assoc., 186 F.3d 301, 305 (3rd Cir. 1999); In re Nickels Midway Pier, LLC, 341 B.R. 486, 499 (D. N.J. 2006). (emphasis added).

Id.

Therefore, when state law provides a creditor the opportunity to seek an alternative remedy such as monetary damages, such a claim is subject to discharge.  However, if a creditor's sole remedy is specific performance, the claim is not subject to discharge.  TKO Props. v. Young (In re Young), 214 B.R. 905, 912 (Bankr. D. Idaho 1997).  Because Florida law enables Kracor to seek an alternative remedy to specific performance (monetary damages), Kracor's claim was *clearly* subject to discharge. See Rabin, 361 B.R. at 285 (holding "[s]ince the breach of the contract at issue here gave rise to a right of payment under Florida law, Plaintiff held a claim that was discharged in Defendant's bankruptcy case.").

Kracor's argument that a holding in which its claim was discharged violates due process also fails.  Notably, it relies on the proposition that the failure to notify a creditor of rejection of an executory contract deprives that creditor of the opportunity to file a claim for money damages. Id. (quoting In re Parkwood Realty Corp., 157 B.R. 687, 691 (Bankr. W.D. Wa. 1993)); (Doc. 109, p. 7).  In response, the Debtor asserts that Kracor's failure to timely close on the sale of the Property, coupled with the non-payment of the $10,000 deposit, resulted in the cancellation of the sale, and therefore there was no executory contract to reject.  Upon review, the Court need

not address the underlying issue of whether there was an executory contract to reject because, *even assuming without deciding*, that there was, Kracor nevertheless received notice of the Debtor's bankruptcy case and was afforded the opportunity to file a proof of claim. These facts undermine Kracor's due process argument related to lack of notice of rejection of an executory contract. See In re Continental Country Club, Inc., 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990) (notice of rejection of executory contract gives creditor the "opportunity to file a claim for damages").

In a similar vein, Kracor also mistakenly argues that the PSA "rode through" the bankruptcy. The "ride through" doctrine, however, rests on the same due process considerations discussed above. Notably, the ride through doctrine arises from due process considerations where a creditor without notice of rejection misses its opportunity to file a claim for rejection damages. In re National Gypsum Co., 208 F.3d 498, 504 (5th Cir. 2000); Federal's Inc. v. Edmonton Inv. Co., 555 F.2d 577, 579 (6th Cir. 1977). Kracor received the opportunity to file a claim for damages yet failed on its own accord to timely do so. Importantly, the Court previously determined that Kracor received adequate due process when it received *actual notice* of the bankruptcy case almost two months prior to the deadline to file a proof of claim. (Doc. 50, p. 3). Kracor did not appeal this ruling, which is now the law of the case. See In re Cone Constructors, Inc., 304 B.R. 513, 520 (Bankr. M.D. Fla. 2003) (quoting Arizona v. California, 460 U.S. 605, 618 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

Based on the Order Denying Motion to Allow Late Claim, the Confirmation Order provided for Kracor's disallowed claim, which resulted in the claim being discharged. (Doc. 53). This result is clearly not violative of due process. As stated in the Order Denying, Kracor

received adequate due process because it was given the opportunity to timely file a proof of claim.  Ultimately, Kracor made a conscious decision to sit on its rights when it failed to timely do so.  The Order Denying was not appealed, the Confirmation Order was entered, and the Debtor received a discharge.  Kracor and Lindsey's rogue actions in reviving the State Court Case a *decade* later, which is an inordinate passage of time, are extremely troublesome.  The Court also finds the current arguments raised after such an excessive passage of time are disingenuous and self-serving.[9]

### B. There is no fair ground of doubt that Kracor's actions violated the discharge.

In determining whether a strict liability standard or purely subjective standard for civil contempt is appropriate, the United States Supreme Court rejected both standards and instead held "[a] court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct."  Taggart v. Lorenzen, 139 S. Ct. 1795, 1799, 204 L. Ed. 2d 129 (2019).  The Supreme Court reasoned that a creditor could be liable for civil contempt if the creditor had "no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."  Taggart, 139 S. Ct. at 1801.

Importantly, "[k]nowledge of the court order that is being enforced is implicit in most cases that address injunctions and indeed is implicit in the Supreme Court's analysis in Taggart."  In re Lett, No. 10-61451-BEM, 2023 WL 2246714, at *6 (Bankr. N.D. Ga. Feb. 27, 2023); see

---

[9] Although the Court will not engage in an analysis, it is worth noting that the equitable doctrine of laches *may* be applicable.  Laches is an equitable defense "that serves to bar suit by a plaintiff 'whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.'" Black Warrior Riverkeeper, Inc. v. U.S. Army Corp. of Eng'rs, 781 F.3d 1271, 1283 (11th Cir. 2015) (quoting Russell v. Todd, 309 U.S. 280, 287, 60 S. Ct. 527, 84 L. Ed. 754 (1940)). Under the doctrine, a defendant must prove: "(1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [a defendant] undue prejudice." Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc., No. 1:14-cv-1725, 2015 WL 11256661, at *2, 2015 U.S. Dist. LEXIS 180373, at *5 (N.D. Ga. July 1, 2015) (citing U.S. v. Barfield, 396 F.3d 1144, 1150 (11th Cir. 2005)) (alteration in original).

also Taggart, 139 S. Ct. at 1802 (quoting Schmidt v. Lessard, 414 U.S. 473, 476, 94 S. Ct. 713, 715 (1974) ("[P]rinciples of 'basic fairness require[s] that those enjoined *receive explicit notice*' of 'what conduct is outlawed' before being held in civil contempt[.]") (emphasis added); Fed. R. Civ. P. 65(d)(2) (an injunction only binds those "who receive actual notice of it"). Further, "a person is in contempt of court if he knowingly violates a court order, whether or not he received a formal notice." Fidelity Mortg. Inv. v. Camelia Builders, Inc., 550 F.2d 47, 52 (2nd Cir. 1976).

Based on the facts and circumstances in the Case, *no* fair ground of doubt exists as to whether Kracor or Lindsey held an objectively reasonable belief that their claim was not discharged. This finding is supported by the law of the case. The Order Denying entered by Judge Funk *explicitly* denied Kracor's right to file a late claim and found that Kracor's due process rights were satisfied because it received notice of the bankruptcy case two months prior to the proof of claim deadline. Notably, Kracor received *actual* notice of the Confirmation Order and the Discharge Order. Approximately *five years* after Kracor received notice of the Debtor's discharge, and a *decade* after this Court denied Kracor's Late Claim, Kracor filed the Motion to Enforce in State Court.

Gamesmanship and "creative" legal arguments should not prevail over the spirit and law of the bankruptcy code and orders issued by the Court. Unfortunately, this is exactly what Kracor and Lindsey seek to do in this Case.[10] While this is a "messy" case it is *not* a complex matter. Over a decade ago, the Court denied Kracor's Late Claim. The Order Denying was not

---

[10] The Court notes that Lindsey is familiar with the bankruptcy court as he filed a Chapter 13 case in 2015 and is also no stranger to contract disputes. Although Lindsey voluntarily dismissed his Chapter 13 case in 2018, the court retained jurisdiction of an adversary proceeding in which the plaintiff accused Lindsey of not transferring a fee simple interest in real property as agreed to in the sale contract (Adv. Pro. 3:18-ap-00043-JAF). In finding in favor of the plaintiff, the court found that the parties had reached an agreement for Lindsey and Kracor "to sell their combined one-hundred percent interest in the [p]roperty to [the plaintiff]." (Id. at Doc. 134, pg. 10). Notably, in holding that Lindsey retained no interest in the property, the court stated that Lindsey's "testimony to the contrary is simply not credible." Id. The decision of the bankruptcy court was ultimately affirmed by the Eleventh Circuit. See Lindsey v. Duckworth Dev. II, LLC, 854 F. App'x 301 (11th Cir. 2021).

10

appealed, and the Debtor subsequently received a discharge. Kracor and Lindsey had actual and timely notice of these events, and as previously discussed, their due process arguments are meritless. Therefore, there is no fair ground of doubt.

The more nuanced question to decide, however, is whether sanctions are warranted. Neither party is before the Court with clean hands. At the hearing, the Debtor brazenly testified that she intentionally omitted Kracor from her schedules. The Court finds this testimony particularly concerning and cautions debtors to provide full and fair disclosure. The Debtor's intentional omission on her schedules, however, does not excuse or absolve Kracor's actions in the State Court. With actual knowledge that Kracor's Late Claim was denied and that the Debtor had received a discharge *five years* prior, Kracor and Lindsey intentionally resurrected the matter.

The rogue actions taken by Kracor and Lindsey in the State Court set off the unfortunate cascade of events that has unfolded. The Debtor was forced into the position of having to reopen this Case and litigate the matter, which has also resulted in a great deal of judicial resources being expended to weave through the tangled web.

Upon review, the Court concludes that Kracor and Lindsey should be held liable for the reasonable attorney's fees incurred by the Debtor in reopening the case and litigating the matter. The Court will not, however, assess punitive damages. As discussed above, the Debtor does not have entirely clean hands herself. While the Court understands that emotions run high in cases such as this, allowing such emotions to steer one in the wrong direction inevitably does not bode well in the long run. Therefore, based on the unique facts and circumstances presented in this "saga," the Court finds that while the assessment of actual damages is appropriate, that punitive damages are not warranted.

**Conclusion**

For the reasons discussed above, the Court finds that Kracor's claim was discharged, and that based on the law of the case *no* fair ground of doubt exists as to whether Kracor held an objectively reasonable belief that its claim was not discharged. Accordingly, the Court will assess sanctions against Kracor and Lindsey for the reasonable attorney's fees incurred by the Debtor in reopening the Case and litigating this matter. The Court will enter a separate order granting in part the Motion for Contempt.